UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN ADMIRALTY

CASE NO.:

CHERYL HILL,

Plaintiff,

vs.

ROYAL CARIBBEAN CRUISES LTD.,
a foreign for-profit corporation,

Defendant.
_____________________________________/

**COMPLAINT**

Plaintiff, Cheryl Hill, sues Defendant, Royal Caribbean Cruises Ltd., a foreign for-profit corporation, and alleges:

1. This is an action for personal injuries under general maritime law seeking damages in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of costs, attorneys' fees and interest and is otherwise within the jurisdiction of this Court.

**THE PARTIES**

2. At all times material, Plaintiff, Cheryl Hill ("Hill"), was and is a resident of Florida, over the age of 18, and otherwise *sui juris*.

3. At all times material, Defendant, Royal Caribbean Cruises Ltd. (hereafter "Royal Caribbean"), was and is a foreign for-profit corporation with its worldwide headquarters, principal address and principal place of business at 1050 Caribbean Way, Miami, Florida 33132.

4. At all times material, Royal Caribbean was and is a common carrier engaged in

the business of marketing, selling and operating a cruise line out of various ports within the continental United States, including Port Everglades, Florida.

5. Royal Caribbean derives substantial revenues from cruises originating and terminating in various ports in the State of Florida, including Miami-Dade County, Florida.

6. At all times material, Royal Caribbean owned, managed, operated, maintained, supervised and/or controlled, or was the owner *pro hac vice* and/or charterer of the ocean-going passenger ship known as the "*Allure of the Seas*".

7. Title 46 U.S.C. § 30509 prohibits Royal Caribbean from limiting its liability for passengers' personal injuries because the *Allure of the Seas* carried passengers, including Hill, between a port in the United States of America and a port in a foreign country.

**<u>JURISDICTION AND VENUE</u>**

8. This Court has subject matter jurisdiction of this admiralty matter pursuant to Title 28 U.S.C. § 1333.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Royal Caribbean is a foreign corporation with its principal place of business in Miami-Dade County, Florida.

10. Royal Caribbean inserted a forum selection clause into the cruise ticket issued to Hill.

11. Royal Caribbean's forum selection clause says all cruise related suits "…shall be litigated, if at all, in and before the United States District Court for the Southern District of Florida located in Miami-Dade County, Florida, U.S.A. …to the exclusion of the courts of any other state, territory or country".

12. Ms. Hill is timely filing her suit since it is filed before the one year anniversary of the incident, which occurred aboard the cruise ship on December 5, 2016.

13. Royal Caribbean was given notice of the incident shortly after it happened.

14. Royal Caribbean, through its ship board accident investigation and medical personnel, investigated Hill's incident shortly after it occurred.

15. Upon information and belief, Royal Caribbean's ship board medical personnel also reported Hill's incident to risk management personnel at its home office.

16. Ms. Hill has complied with all conditions precedent for filing this lawsuit.

## GENERAL ALLEGATIONS

17. Royal Caribbean invited the general public, including Hill, to travel as passengers aboard the cruise ship "*Allure of the Seas*" in exchange for the payment of money.

18. On or about December 5, 2016, Hill was aboard the *Allure of the Seas* as a fare paying passenger for a cruise that: (a) departed from Port Everglades, Florida; (b) visited foreign ports; and (c) returned to Port Everglades, Florida.

19. Ms. Hill did not complete the cruise because she had to fly home early to obtain emergency medical care for a left bi-malleolar ankle fracture.

20. Ms. Hill and her husband were fare paying passengers aboard the *Allure of the Seas* at all material times.

21. Upon information and belief, Royal Caribbean was involved with planning, approving and installing a "flowrider" and nearby spectator section on the *Allure of the Seas*. A "flowrider" is a machine that creates an artificial wave that people use to surf, water ski or boggie board. Passengers using the flowrider will drop water and sun tanning lotion from their

bodies onto the surrounding deck as they use and move around the ride.

22. Upon information and belief, Royal Caribbean directed the shipbuilder install bleachers adjacent to the flowrider so that passengers, like Hill, can sit and watch people using the ride.

23. Royal Caribbean knew or should have known the deck surrounding the flowrider gets wet and slippery before Hill's incident.

24. Royal Caribbean knew or should have known there were passengers, like Hill, who had never before seen a flowrider and who were unaware of the risks posed to spectators moving to and from the bleachers adjacent to the ride.

25. Royal Caribbean did not install appropriate warning signs to alert passengers, like Hill, about the dangers presented in moving to and from the flowrider area.

26. Royal Caribbean knew or should have known that the deck surrounding the flowrider gets slippery from water and sun tanning lotion that falls off the riders as they move around the ride and to and from the attraction.

27. Royal Caribbean, however, failed to instruct or direct the builder to make the surrounding deck reasonably slip resistant while it is covered with water and/or sun tanning lotion. Stated in a different way, the deck lacks appropriate non-skid to keep it reasonably slip resistant for passengers to walk over when the deck is wet.

28. Royal Caribbean also knew or should have known that the spectator's bleachers adjacent to the flowrider must have rails or hand holds so that passengers can safely step down from the bleachers onto the deck while it is wet.

29. The spectator's bleachers adjacent to the flowrider did not have an appropriate rail

or hand hold device for passengers, like Hill, to grab onto as they stepped up onto and down off of the bleachers.

30. On December 5, 2016, Hill and her husband went to watch passengers using the "flowrider". This was the first time they encountered the flowrider and were unaware of the risks posed to them. Pictures of the flowrider, spectator's bleachers, and the area where Hill slipped and fell are attached as Composite Exhibit "A".

31. Both passengers and crew use the flowrider. When riders fall, they are flung to the back wall of the machine and exit. The passengers and crew then walk around to the front of the ride where they get back on. The process causes water and sun tanning lotion to fall from the riders and accumulate on the surrounding deck.

32. Royal Caribbean knows about the slip hazard on the surrounding deck and attempted to post warning signs about the dangers presented.

33. The warning signs, however, are inadequately and/or improperly placed because many people stand around the flowrider and block the signs from view.

34. The deck area around the flowrider is also unreasonably slippery when wet with water and sun tanning lotion.

35. Royal Caribbean should have ensured that the deck adjacent to the flowrider is made reasonably slip resistant so that passengers going to and from the flowrider and adjacent bleachers could do so safely.

36. On December 5, 2016, Hill and her husband went to watch passengers using the flowrider as the ship was departing the Bahamas.

37. This was the first time Hill and her husband visited this area of the ship and the

first time they encountered a flowrider.

38. Ms. Hill and her husband were generally unaware of the hazards or risks as they approached the flowrider and bleachers.

39. Ms. Hill and her husband stepped up and sat in the bleachers in front of the flowrider without incident.

40. Ms. Hill and her husband did not see any warning signs to warn them about the slip hazard prior to the incident.

41. Ms. Hill and her husband watched the flowrider participants for a period of time.

42. During this time, the deck around the bleachers where Hill was seated became wet and slippery.

43. As Hill stepped down from the bleachers, her left foot slipped and she fell sustaining a severe fracture of her left malleolous; aggravation of a herniated disc in her lumbar spine; and other personal injuries.

44. Ms. Hill was transported by Royal Caribbean's crew to the ship's infirmary.

45. The *Allure of the Seas'* doctor diagnosed Hill sustained a left bi-lateral malleous fracture and stabilized the fractured ankle until Hill could receive shore side medical treatment.

46. The *Allure of the Seas'* doctor felt it necessary for Hill to be evacuated from the ship at St. Thomas, U.S.V.I., and fly back home to Florida to obtain more medical treatment.

47. On December 12, 2016, Dr. John Schilero performed surgery on Hill's left ankle.

48. Dr. Schilero performed an open reduction with internal fixation procedure. Pictures of the x-rays showing the internal fixation of Hill's left ankle are attached as Exhibit "B".

49. Royal Caribbean knew, or should have known through the exercise of reasonable care, that its failure to erect and maintain appropriate warning signs around the flowrider will result in a passenger slipping and falling in the manner that Hill did on December 5, 2016.

50. Upon information and belief, before December 5, 2016, other passengers traveling aboard the *Allure of the Seas* have been injured in similar slip and fall incidents near the bleachers adjacent to the flowrider.

51. Royal Caribbean failed to post appropriate warning signs; make and maintain a reasonably slip resistant deck; and erect appropriate hand-rails or hand holds at the bleachers so that passengers could safely go to and from the bleachers without unreasonable risk of harm.

52. The dangerous nature of the wet deck at the bleacher area where passengers are invited to be in close proximity to the flowrider and encounter the walking hazard was not open and obvious to Hill.

53. There was insufficient warning to warn Hill about the risks presented at the spectator area adjacent to the flowrider.

54. Royal Caribbean also failed to implement a safety management system to periodically inspect the flowrider area, including the spectator bleachers, and ensure appropriate warnings were posted; the deck was in a reasonably slip resistant state; and proper hand-rails or hand holds were present to enable passengers to get on and off the bleachers without harm.

55. Assuming *arguendo* that Royal Caribbean had a safety management system in place, then it was nevertheless at fault for failing to implement or follow the plan.

**COUNT I - NEGLIGENCE**

56. Plaintiff re-alleges, adopts and incorporates by reference the allegations in

paragraphs 1 through 54 of the Complaint as if fully set forth herein.

57. At all times material, Royal Caribbean, through its employees, servants, agents and/or representatives acting within the course and scope of their employment, owed a duty to exercise reasonable care under the circumstances to its passengers, including Hill.

58. Royal Caribbean's duty of reasonable care under the circumstances includes the duty to inspect, maintain and operate the *Allure of the Seas*, including the spectator area adjacent to the flowrider, in a reasonably safe manner.

59. Royal Caribbean's duty of reasonable care under the circumstances includes, but is not limited to, the following:

a. Implementing a safety management system to ensure the deck around the flowrider is kept in a reasonably safe condition for passengers to use;

b. Conducting timely and routine inspections of the deck area around the flowrider to ensure the hazard signs are placed in positions where passengers can see them to read the warnings about the slip hazards relating to the wet deck;

c. Implementing a safety policy that ensures timely and appropriate actions are taken to correct dangerous conditions in and around the bleacher section near the flowrider;

d. Taking timely and appropriate action to fix or repair the deck near the bleachers at the flowrider so the surface maintained a reasonable slip resistence when it becomes wet from water and sun tan lotion;

e. Posting appropriate warnings at the bleacher area adjacent to the flowrider aboard the *Allure of the Seas* to warn passengers, including Hill, about the dangerous nature of the slippery deck;

f. Failing to have a hand-rail or hand-hold at the bleachers so that passengers have something to hold onto and steady themselves while stepping down from the bleachers to the slippery deck;

g. Implementing or following maritime safety procedures to ensure the passenger bleacher area on board the *Allure of the Seas* is reasonably safe for passengers' use;

h. Maintaining the subject spectator area and bleachers near the flowrider aboard the *Allure of the Seas* in reasonably safe condition in accordance with applicable safety regulations so that passengers, like Hill, can enter and exit the bleachers without being injured by the slippery deck.

60. On or about December 5, 2016, Royal Caribbean, through its employees, servants, agents and/or representatives acting within the course and scope of their employment, breached its duty to exercise reasonable care under the circumstances owed to Hill, and was negligent and careless by committing the following acts and/or omissions, which include, but are not limited to, the following:

a. Failing to properly inspect, maintain and keep the deck area and bleachers near the flowrider on the ship in a reasonably safe condition for the passengers, including Hill, to use;

b. Failing to properly inspect and monitor the deck and bleachers near the flowrider to make sure appropriate safety warnings were posted and visible to passengers; the deck maintained in reasonably slip resistant condition to water and sun tan lotion; and appropriate hand-hold devices were in place in appropriate locations so passengers can hold something to balance themselves as they step down from the bleachers onto the wet deck;

c. Failing to properly and timely repair or fix the unreasonably slippery decks near the flowrider;

d. Creating a dangerous condition at the passenger spectator area adjacent to the flowrider by lack of appropriately placed warning signs, lack of slip resistant deck, and/or lack of appropriate hand-rails or hand-holds at the bleachers;

e. Failing to take reasonable care to keep the decks from becoming a slip hazard to passengers like Hill;

f. Failing to warn Hill and other passengers of the slippery nature of the decks when they become wet from water and sun tan lotion when Royal Caribbean knew, or should have known, of the existing hazard in walking across the wet decks without warnings or hand-hold devices;

g. Failing to discover in a timely manner the hazardous conditions in and around the passenger spectator area adjacent to the flowrider;

h. Failing to utilize reasonable care and proper safety policies,

procedures, protocols and practices to detect dangerous conditions at the passenger spectator area adjacent to the flowrider;

i. Failing to properly train and instruct the ship board employees/crewmembers on how to inspect, detect, report and remedy dangerous conditions at the passenger spectator area adjacent to the flowrider;

j. Failing to otherwise provide Hill and other passengers with a safe spectator area at the flowrider;

k. Failing to comply with industry standards for providing a reasonably slip resistant walking surface in and around the passenger spectator area adjacent to the flowrider on board the *Allure of the Seas*; and/or,

l. Other acts or omissions constituting a breach of the duty to use reasonable care under the circumstances that are revealed through investigation and discovery.

61. Royal Caribbean created and/or knew, or should have known, of the dangerous or hazardous conditions at the passenger spectator area adjacent to the flowrider.

62. As a direct and proximate result of the above-described negligence and carelessness by Royal Caribbean, Hill was injured in and about her body, including but not limited to her fractured left ankle, aggravation of a herniated disc in her lumbar spine, physical impairment and/or disability, mental anguish, the loss of capacity for the enjoyment of life, and the aggravation of pre-existing conditions and inconvenience. All of said damages are

permanent and continuing in nature.

63. As a further direct and proximate result of Royal Caribbean's negligence, Hill incurred medical expenses in the past and will continue to incur such expenses in the future.

WHEREFORE, Plaintiff, Cheryl Hill, demands judgment against Defendant, Royal Caribbean Cruises Ltd., for damages, pre-judgment interest on pecuniary losses, post-judgment interest to the extent allowed by law, attorneys' fees and costs to the extent allowed by law.

## DEMAND FOR JURY TRIAL

Cheryl Hill demands a trial by jury as provided for by the Seventh Amendment to the U.S. Constitution and/or the "savings to suitors clause".

DATED: March 10, 2017.

Respectfully submitted,

By:*/s/ Farris J. Martin, III*
FARRIS J. MARTIN, III
Florida Bar No. 879916
JAMES W. STROUP
Florida Bar No. 842117
STROUP & MARTIN, P.A.
*Attorneys for Plaintiff*
119 Southeast 12th Street
Fort Lauderdale, Florida 33316
Telephone: (954) 462-8808
Facsimile: (954) 462-0278
E-mail: fmartin@strouplaw.com
E-mail: jstroup@strouplaw.com